UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI REA,

   Plaintiff,

v.

BANK OF AMERICA, N.A.,

   Defendant.

Case No. 4:17-cv-12388

Honorable Linda V. Parker

Magistrate Stephanie Dawkins Davis

_____/

LAW OFFICE OF GREGORY T. GIBBS
By:  Gregory T. Gibbs (P26440)
  Alec S. Gibbs (P73593)
717 S. Grand Traverse
Flint, MI 48502
(810) 239-9470
greggibbs51@sbcglobal.net
gibbsale@gmail.com

LAW OFFICE OF ANN A. LERCHE
By:  Ann A. Lerche (P33331)
717 S. Grand Traverse
Flint, MI 48502
(810) 239-9470
annlerche@gmail.com


*Counsel for Plaintiff*

KIENBAUM OPPERWALL
 HARDY & PELTON, P.L.C.
By:  Elizabeth P. Hardy (P37426)
  Thomas J. Davis (P78626)
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@kohp.com
tdavis@kohp.com


*Counsel for Defendant*

_____/

**Defendant's Motion in Limine Re: Plaintiff's Deposition Admissions in**
***Whiteaker v. Bank of America***

Defendant Bank of America ("the Bank"), by its attorneys, Kienbaum Opperwall Hardy & Pelton, P.L.C., moves for a motion in limine holding admissible Plaintiff Lori Rea's testimony from her deposition as a non-party witness in *Whiteaker v. Bank of America*, No. 2:16-cv-13202 (E.D. Mich.). In support of its motion, the Bank states the following:

1.    In her deposition testimony in *Whiteaker*, then non-party witness Lori Rea admitted, among other things, that she falsified a bank record, knew it was wrong to do so, and was terminated as a result.

2.    After she gave testimony in *Whiteaker*, Rea filed the present litigation. Despite her prior sworn testimony, Rea's Complaint now alleges that she was actually terminated for taking FMLA leave.

3.    The prior sworn testimony of a party-opponent is unambiguously admissible in civil litigation. *See, e.g.* Fed. R. Evid. 801(d)(2). Rea's admissions in the *Whiteaker* deposition are thus admissible in this case.

4.    Rea's counsel now claim that Rea's admissions in *Whiteaker* should be suppressed, claiming that Rea was "represented" by counsel at the time of the deposition; that counsel in the *Whiteaker* deposition knew Rea was represented; and that, as a result, Michigan Rule of Professional Conduct 4.2 precluded the Bank's counsel from asking her questions in the deposition.

5.     For the reasons set forth in the accompanying brief, Rule 4.2 is not applicable here, and even if it were, exclusion of testimony is not a proper remedy.

6.     The Court should grant this motion in limine and hold that Rea's testimony from *Whiteaker* is admissible in this action.

WHEREFORE, the Bank respectfully requests that the Court grant the Bank's motion in limine.

Respectfully submitted,

KIENBAUM OPPERWALL
 HARDY & PELTON, P.L.C.

*s/Thomas J. Davis*
By:   Elizabeth P. Hardy (P37426)
        Thomas J. Davis (P78626)
Attorneys for Defendant
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
ehardy@kohp.com
Dated:  October 18, 2017     tdavis@kohp.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI REA,

       Plaintiff,

v.

BANK OF AMERICA, N.A.,

       Defendant.

Case No. 4:17-cv-12388

Honorable Linda V. Parker

Magistrate Stephanie Dawkins Davis

_____/

LAW OFFICE OF GREGORY T. GIBBS
By:  Gregory T. Gibbs (P26440)
     Alec S. Gibbs (P73593)
717 S. Grand Traverse
Flint, MI 48502
(810) 239-9470
greggibbs51@sbcglobal.net
gibbsale@gmail.com

LAW OFFICE OF ANN A. LERCHE
By:  Ann A. Lerche (P33331)
717 S. Grand Traverse
Flint, MI 48502
(810) 239-9470
annlerche@gmail.com

KIENBAUM OPPERWALL
 HARDY & PELTON, P.L.C.
By:  Elizabeth P. Hardy (P37426)
     Thomas J. Davis (P78626)
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@kohp.com
tdavis@kohp.com

*Counsel for Defendant*

*Counsel for Plaintiff*

_____/

**Defendant's Brief in Support of Motion in Limine Re: Plaintiff's Deposition Admissions in *Whiteaker v. Bank of America***

## Concise Statement of Issue Presented

Whether the Court should hold that Lori Rea's testimony as a non-party witness in *Whiteaker v. Bank of America*, No. 2:16-cv-13202 (E.D. Mich.) is admissible?

# Table of Contents

Concise Statement of Issue Presented ...................................................... ii

Table of Authorities ................................................................................ iv

Controlling or Most Appropriate Authorities .......................................... vi

Introduction ............................................................................................ 1

Background ............................................................................................. 2

Argument ................................................................................................ 5

I.     Rea was not represented by her current counsel until June 28, 2017—more than three weeks after her June 9, 2017 deposition. ................. 6

II.    Even if Rea was "represented," the Bank's attorneys did not *know* that. ........................................................................................... 8

III.   Rule 4.2 does not apply on its face as Rea was a non-party, counsel were not representing a client as to Rea's FMLA claims, and were examining her as a witness to Whiteaker's distinct claims. .......................................................................... 10

       A.    Rea was not a "party" on June 9, 2017 as required by Rule 4.2. ........................................................................ 11

       B.    The attorneys were not "representing a client" over Rea's claims ............................................................................ 11

       C.    Rea was questioned in her capacity as a witness to Whiteaker's age claims, not her then-nonexistent FMLA retaliation claim. ................................................................ 12

IV.   Even if Rule 4.2 applied, the proper remedy is not exclusion ...................... 13

Conclusion ............................................................................................. 14

# Table of Authorities

## Cases

*Chapman v. Sullivan*,
  161 Mich. App. 558, 411 N.W.2d 754 (1987) ......................................7

*Fletcher v. Bd. of Ed.*,
  323 Mich. 343, 35 N.W.2d 177, 180 (1948) ........................................8

*Humco, Inc. v. Noble*,
  31 S.W.3d 916 (Ky. 2000)................................................................9

*Jackson v. Pollick*,
  1991 WL 157247, 941 F.2d 1209 (6th Cir. 1991)................................8

*Local 502 v. Cty. of Wayne*,
  No. 260202, 2006 WL 2547082 (Mich. Ct. App. Sept. 5, 2006)........................13

*McCool v. Operative Plasterers' & Cement Masons' Int'l Ass'n*,
  No. 13-13614, 2014 WL 635797 (E.D. Mich. Feb. 18, 2014)..............................7

*Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc.*,
  2010 WL 10107597 (E.D. Mich. May 12, 2010)..................................11

*Plan Comm. In Driggs Reorg. Case v. Driggs*,
  217 B.R. 67 (D. Md. 1998)...............................................................13

*United States v. Ford*,
  176 F.3d 376 (6th Cir. 1999) ............................................................12

*Valassis v. Samelson*,
  143 F.R.D. 118 (E.D. Mich. 1992)....................................................11

*Weider Sports Equip. Co. v. Fitness First, Inc.*,
  912 F. Supp. 502 (D. Utah 1996) ......................................................13

*Whiteaker v. Bank of America*,
  No. 2:16-cv-13202 (E.D. Mich.) ................................................. ii, 1, 2

## Other Authorities

Mich. Ethics Op. RI-39 ............................................................12

Mich. Ethics Op. RI-48 ....................................................................8

Restatement (Third) of the Law Governing Lawyers § 15 (2000) ...........................7

Restatement (Third) of the Law Governing Lawyers §§ 14, 31 (2000) ....................7

**Rules**

Fed. R. Evid. 608(b) ....................................................................13

Fed. R. Evid. 611(b) ....................................................................13

Fed. R. Evid. 801(d)(2) ..................................................................5

Michigan Rule of Prof'l Conduct 1.0(c) ................................................11

Michigan Rule of Prof'l Conduct 4.2 ................................................1, 5

## Controlling or Most Appropriate Authorities

Michigan Rule of Prof'l Conduct 4.2

Mich. Ethics Op. RI-39

Restatement (Third) of the Law Governing Lawyers §§ 14, 31 (2000)

*Chapman v. Sullivan*, 161 Mich. App. 558, 411 N.W.2d 754 (1987)

*Fletcher v. Bd. of Ed.*, 323 Mich. 343, 35 N.W.2d 177, 180 (1948)

*Valassis v. Samelson*, 143 F.R.D. 118 (E.D. Mich. 1992)

**Introduction**

Lori Rea, a former Financial Center Manager for Bank of America, was terminated in August 2015 because she falsified a bank record. Rea has repeatedly admitted this, including most recently under penalty of perjury in a deposition noticed by plaintiff's counsel in a case called *Whiteaker v. Bank of America*, No. 2:16-cv-13202 (E.D. Mich.). In the deposition, Rea admitted to falsifying the record, admitted that she knew she committed a terminable offense, and that her assistant manager who helped falsified the record was also terminated.

Nevertheless, Rea filed this lawsuit claiming—contrary to her repeated admissions—that she was terminated because she applied for FMLA leave. And now, desperate to keep out Rea's admissions, her attorneys claim that the Bank's counsel had no right to ask Rea questions in *Whiteaker* because Rea was "a represented party" per Michigan Rule of Professional Conduct 4.2. Indeed, they have threatened to file an ethical grievance against the Bank's attorneys. But for several reasons, their charge is meritless—not least of which is the fact that Rea's own retention agreement with the Gibbs Firm was not signed until June 28, 2017—three weeks *after* her deposition in *Whiteaker*. Moreover, even if Rea was represented by Gibbs on June 9, 2017, the Bank's counsel did not know that—and Rule 4.2 only applies if an attorney *knows* a person is represented. The Court should grant this Motion and award Defendant its attorney's fees incurred in drafting the motion.

-1-

## Background

In order to accommodate clients who need to make after-hours deposits, many Bank of America financial centers offer a night depository box. Bank policy is that the night depository must be opened the next day, shortly before the Center opens, under "dual control" (*i.e.*, by two employees working together). The dual-control employees must also log the time that the vault was opened.

Lori Rea was a financial center manager at the Bank's Highland/Milford Center. On August 4, 2015, Rea did not open the night depository for over two hours after the bank's opening. Rather than acknowledging the policy violation (which would have led to a lower score on an upcoming audit), Rea and assistant manager Amy Thickstun decided to falsify the night deposit log. Tipped off to the falsification by another employee, the Bank's corporate investigator obtained video surveillance of Rea and Thickstun opening the depository at 11:20 am and then signing the log book, which falsely stated that the vault was opened and closed at 8:58 am. Rea ultimately confessed to falsifying the log "to remain under audit guidelines." Ex. 1. Rea and Thickstun were both terminated on August 24, 2015.

Rea would later file an EEOC charge against the Bank alleging age and sex discrimination; a right-to-sue letter was mailed on December 8, 2016 and expired on or around March 8, 2017 with no suit filed. Ex. 2. On June 9, 2017, Rea was deposed by the plaintiff (one of her former employees) in *Whiteaker v. Bank of*

*America*, No. 2:16-cv-13202 (E.D. Mich.). Ex. 3. At the deposition, Rea was first

questioned by Whiteaker's attorney Jennifer Lord. Early in Ms. Lord's examina-

tion, Rea admitted that she opened the night drop depository late, that she wrote

the "wrong" time, and was terminated for "falsifying a record." Ex. 4, Rea Dep. at

8-9. Later in Ms. Lord's examination, Rea consulted a notebook to answer ques-

tions; ultimately, Ms. Lord marked the notebook as an exhibit, and walked Rea

through the entries. *Id.* at 23, 55 & Dep. Ex. 24. Near the end of the notebook,

Lord and Rea discussed entries dated between September 9, 2015 and November

24, 2015 regarding Rea's consultation with an attorney:

> Q. Okay. So these next two pages –
>
> A. Oh, this is about me, sent an inquiry to a lawyer's office regarding my termination to Bank of America. Then I had an appointment with them. Let's see. I called -- oh, I called Bank of America for my file, sent file to lawyer for review. I had a lawyer appointment. Lawyer advised to put in Civil Rights for age discrimination. You have to do it within six months. And then he seemed to think I had a case and wants a $3,000 retainer.
>
> Q. Did you ever file a lawsuit?
>
> A. No. No, not yet. I don't know. I don't know what I'm going to do.

Ex. 4, Rea Dep. 66 & Dep. Ex. 24. Rea made no reference to having consulted an

attorney after November 2015, and did not say that she paid a retainer.[1] Later, the

Bank's counsel Elizabeth Hardy cross-examined Rea. *Id.* at 83. Near the end of her

---

[1] Since then, Rea's counsel have produced her retainer agreement dated June 28, <u>2017</u>—confirming that Rea did *not* sign a retention agreement with the Gibbs firm until nearly two years later. Ex. 5, Rea-Gibbs Law Firm Retainer Agreement.

examination, Ms. Hardy returned to the topic of Rea's termination, with Rea confirming that she and her assistant manager "both engaged in falsification of a bank document," that it was an "error in judgment," and that she did not "know of anyone who has engaged in falsification of bank documents as a branch manager who has not been terminated." *Id.* at 128-29. The deposition ended soon thereafter.

Rea filed this lawsuit on July 24, 2017—over six weeks after she had been deposed in *Whiteaker*—claiming that she had been terminated for applying for FMLA leave. R. 1, Pg ID 7. During the parties' Rule 26 conference on September 7, 2017, undersigned counsel told Rea's counsel Alec Gibbs that Rea had been deposed in *Whiteaker*. *See* Ex. 6. Mr. Gibbs did not express concern or otherwise raise any objection upon hearing that Rea had been deposed, and he did not claim on that call that his firm had "represented" Rea on June 9, 2017. The next day, the Bank's counsel sent a letter enclosing the transcript, and requesting that Rea withdraw her frivolous claim in light of her admissions that she was fired for records falsification. *Id.*

After Rea's counsel initially suggested that they would consider dismissal, they responded a week later by threatening, in a draft Rule 26 plan, to file a grievance against the Bank's counsel—and claiming, for the first time, that Gibbs had "represented" Rea on June 9, 2017, and that the Bank's attorneys violated MRPC 4.2 by asking Rea questions that day during the *Whiteaker* deposition. Ex. 7.

Despite lengthy correspondence and a telephone conference in which the Bank's counsel attempted to explain the multiple reasons why Rule 4.2 was inapplicable, and explaining that sanctions would be sought if counsel persisted in making baseless threats of ethical charges, Rea's counsel refused to back off. Ex. 8, 9. At the Rule 16 conference, the Court authorized briefing on this issue. The Bank thus files this motion asking the Court to hold Rea's testimony admissible.

## Argument

The underlying evidentiary issue behind this motion is simple: Rea's prior sworn testimony is, unambiguously, admissible non-hearsay under Federal Rule of Evidence 801(d)(2). Rea has not apparently contested this basic point of law.

Instead, she seeks to exclude her admissions in *Whiteaker* by making inappropriate accusations of ethical wrongdoing and threatening the Bank's counsel with the filing of a Bar grievance. The basis for these threats is their claim that Rea was "represented" at the time of the *Whiteaker* deposition, and that the Bank's counsel were not permitted to ask her questions at deposition under Michigan Rule of Professional Conduct 4.2. Rule 4.2 provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party whom the lawyer knows to be represented in the matter by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

As described below, Rea's claim of a Rule 4.2 violation is invalid on multiple grounds. For one thing, Rea does not appear to have retained the Gibbs firm

-5-

until *after* she was deposed—and thus was not even "represented" at the time. Moreover, if she *was* represented, Rule 4.2 requires the allegedly offending attorney to subjectively *know* about the representation—and the Bank's counsel did not know. And finally, several objective elements of the rule are facially inapplicable: (1) Rea is not a party; (2) the Bank's counsel were not "representing a client" over Rea's (then non-existent) FMLA retaliation claims; and (3) the Bank was not "communicating" with Rea over her (then non-existent) FMLA retaliation claim, but rather about Whiteaker's distinct claims, to which Rea was allegedly a witness. The Court should reject Rea's frivolous Rule 4.2 argument, and hold that Rea's June 9, 2017 testimony is fully admissible.

## I.     Rea was not represented by her current counsel until June 28, 2017—more than three weeks after her June 9, 2017 deposition.

Rea's challenge to the admissibility of her June 9, 2017 deposition testimony must rest on the premise that she was, in fact, represented by the Gibbs Firm on June 9, 2017. But on October 9, 2017, Rea produced a document that revealed the truth: she did not sign a retention letter with the Gibbs Firm until June 28, 2017—nearly three weeks *after* her *Whiteaker* deposition. Ex. 5.

Given this June 28, 2017 retention letter, and the absence of any other documentary proof establishing an earlier representation date, it unclear how Rea can continue to assert, in good faith, that Rea was represented on June 9, 2017. She has suggested before that she was represented because, in November 2015, she *con-*

*sulted*, but did not hire, the Gibbs Firm. If that is her argument, it is wrong, because Rea fails to grasp that a mere consultation does not itself establish a representation.

Consistent with the normal definition of the word, a lawyer is "representing" a client during the time that she has been engaged to perform legal services for that client. *Chapman v. Sullivan*, 161 Mich. App. 558, 561–62, 411 N.W.2d 754, 755 (1987) (holding that lawyer's representation lasted from time he was "retained by plaintiff to perform specific legal service" until that work ended without retention for further representation on other matters); *see generally* Restatement (Third) of the Law Governing Lawyers §§ 14, 31 (2000) (legal representation occurs when person expresses "intent that the lawyer provide legal services" and lawyer consents; it ends, among other reasons, when "the lawyer has completed the contemplated services."); MRPC Preamble (noting that most duties arising out of the "client-lawyer relationship attach only after the client has requested the lawyer to render legal services and the lawyer has agreed to do so.").

Given the meaning of "representation," a potential client can meet with an attorney—and even disclose confidences—without resulting in a "representation" if the lawyer and client do not reach agreement on providing services.[2] *See, e.g.,*

---

[2] At best, an unsuccessful consultation can lead to the "client" being treated as a "formerly represented" person for purposes of the *consulting* attorney's ethical duties, such as conflict of interest rules. *See McCool v. Operative Plasterers' & Cement Masons' Int'l Ass'n*, No. 13-13614, 2014 WL 635797, at *7 (E.D. Mich. Feb. 18, 2014); Restatement (Third) of the Law Governing Lawyers § 15 (2000) (noting

*Jackson v. Pollick*, 1991 WL 157247 at *2, 941 F.2d 1209 (6th Cir. 1991) (table) (citing Michigan law for proposition that client and attorney must both agree to begin representation); *Fletcher v. Bd. of Ed.*, 323 Mich. 343, 348–49, 35 N.W.2d 177, 180 (1948) (representation is a matter of contract between client and lawyer).

Thus, while Rea testified at deposition that she consulted an (unnamed) attorney in November 2015, that fact alone does not establish representation. She did not say that she had gone beyond the consultation, and actually retained counsel at that time—and it is now clear that the November 2015 consultation did not bear such fruit, as Rea did not actually retain the Gibbs Firm until June 28, 2017, after she was deposed. Rule 4.2 did not apply.

## II.    Even if Rea was "represented," the Bank's attorneys did not *know* that.

As noted above, Rea was not represented on June 9, 2017. But even if she was, Rea's allegation of a Rule 4.2 violation still fails. The rule prohibits only contacts with a person "whom the lawyer *knows* to be represented in the matter," and thus an attorney's lack of actual knowledge of the representation means that there is no Rule 4.2 violation. *See, e.g., Humco, Inc. v. Noble*, 31 S.W.3d 916, 919 (Ky.

---

duties for consulting lawyer when consultation does not result in representation); Mich. Ethics Op. RI-48 (mere consultation without retention does not necessarily result in attorney-client relationship for conflict-of-interest purposes, but if it does, the consulting person is treated as "formerly represented" by *that* attorney for purposes of ethics rules.) (Ex. 14). But whatever ethical duties may apply to the consulting lawyer after a failed consult, there is no "representation" that forever precludes *other* lawyers from speaking to the person in question.

2000) (rejecting Rule 4.2 challenge as "there is no evidence from the record that…
[attorney] knew that Humana was represented by counsel."); *State v. Gaines*, 36
Conn. App. 454, 462, 651 A.2d 1297, 1301 (1994) ("As the state was unaware that
the defendant had retained a lawyer, Rule 4.2 is inapplicable and the trial court
properly refused to suppress [the party's statements]").

Here, Rea's claim fails because the Bank's counsel in *Whiteaker*—Ms. Har-
dy and Mr. Davis—did not know that Rea was "represented" on June 9, 2017 (if,
in fact, she was.) They have represented that to opposing counsel, and do so again
here as officers of this Court. Ex. 10, Hardy Declaration; Ex. 11, Davis Declara-
tion. And while that subjective lack of knowledge of is dispositive, Ms. Hardy and
Mr. Davis's beliefs are consistent with all of the objective facts known at the time:

- Rea did not appear at the deposition with an attorney;

- Rea did not testify that she had an attorney;

- Rea was subpoenaed by Plaintiff in January 2017, and was ultimately
  deposed six months later in June 2017, yet counsel never received
  word of a call or other correspondence by an attorney for Rea;

- Rea had not filed a lawsuit against the Bank, even though she had
  been terminated almost two years prior;

- While Rea had filed an administrative charge related to age and sex
  discrimination (but *not* FMLA retaliation, which is at issue here), her
  right-to-sue letter issued on December 8, 2016. The 90-day statute of
  limitations under that right-to-sue expired around March 2017—
  nearly three months before the deposition. *See* Ex. 2.

- The right-to-sue letter was sent to Rea personally, and was not copied to an attorney—which is ordinarily the case when a person is represented at the EEOC.[3] *Compare* Ex. 2 *with* Ex. 12.

Rea's counsel, ignoring these facts, has claimed that Rea's reference to her two-year old consultation necessarily proves that the Bank's counsel knew she was represented. But as noted *supra* at Part I, consultation does not equal representation—an obvious fact given that most lawyers consult with many potential clients in their career, without winding up representing them. *See* Ex. 10 ¶ 6. And if anything, the fact that the consultation had been two years prior suggests that Rea had *not* obtained representation. What competent attorney representing Rea would do absolutely nothing on the case for two years, allow the statutes of limitations on Rea's right-to-sue letter run, and not respond in any way to a subpoena to testify against her former employer? As counsel did not know Rea was "represented" while they were taking the deposition, Rule 4.2 did not apply.

### III. Rule 4.2 does not apply on its face as Rea was a non-party, counsel were not representing a client as to Rea's FMLA claims, and were examining her as a witness to Whiteaker's distinct claims.

Rea's claim that Rule 4.2 precluded the Bank's lawyers from questioning her at a deposition is also wrong for several objective reasons, including that Rea was not a party, the Bank's counsel was not "representing" a client over *Rea*'s claims, but

---

[3] Moreover, the Bank recently obtained the EEOC file on Rea's administrative charge via a FOIA request. The file likewise has no mention of counsel, and shows the Michigan Department of Civil Rights (the agency that did the intake) corresponding directly with Rea, and Rea responding *pro se*. *See* Ex. 13.

rather were communicating with her as a witness to *Whiteaker's* distinct claims. As these elements of Rule 4.2 are not satisfied, the rule is inapplicable.

### A.   Rea was not a "party" on June 9, 2017 as required by Rule 4.2.

The "application of Rule 4.2 is specifically limited to a party," and "[t]herefore, any analysis of the scope of Rule 4.2 must begin with a determination that the person to be approached by the attorney is indeed a party." *Valassis v. Samelson*, 143 F.R.D. 118, 122 (E.D. Mich. 1992); *accord Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc.*, 2010 WL 10107597, at *4 (E.D. Mich. May 12, 2010) ("By its terms, MRPC 4.2 applies only to parties").[4] In the case of "litigants [who] are individuals, it is relatively simple to determine the identity of the parties." *Valassis*, 143 F.R.D. at 122. It is just that simple here: Rea was *not* a party on June 9, 2017, as she did not file this suit until July 24, 2017.

### B.   The attorneys were not "representing a client" over Rea's claims.

On June 9, 2017, the Bank's attorneys were not "representing a client" with respect to Rea's FMLA claim against the Bank. Indeed, on that date they were not representing the Bank for any matter except Janet Whiteaker's age discrimination

---

[4] Rea presumably will point to language in the comment to Rule 4.2 suggesting that a person need not be a "party to a formal proceeding" for the Rule to apply. But the Rules themselves indicate that the "text of each rule is authoritative" and the accompanying comment "does not expand or limit the scope of the obligations, prohibitions, and counsel found in the text of the rule." MRPC 1.0(c). Thus, these same courts have refused to expand the plain language of Rule 4.2 by using language in Rule 4.2's comments. *Valassis*, 143 F.R.D. at 122; *Nissan N. Am.,* 2010 WL 10107597, at *4 (E.D. Mich. May 12, 2010).

suit, a matter in which Rea was only a witness. Ex. 10 ¶ 4. Nor could Ms. Hardy and Mr. Davis have been representing the Bank on such a matter—on June 9, 2017, Rea had not filed any administrative or judicial claim of an FMLA violation.

Michigan Ethics Opinion RI-39 (Ex. 14) makes this point clear. There, the bar found that a plaintiff's attorney could talk with his client's employer—even if the employer had an attorney—to investigate a *possible* claim because "by definition there would be no lawyer who was representing the [employer] 'in the matter' at that particular time since the existence of a controversy has not been confirmed." *Id.* Since Rea, at best, was exploring a *potential* FMLA claim on June 9, 2017, Ms. Hardy and Mr. Davis "by definition" could not have been representing the Bank with respect to Rea's FMLA retaliation claim, the existence of which Rea herself admitted was only a mere possibility at the time. Rule 4.2 did not apply.

### C.   Rea was questioned in her capacity as a witness to Whiteaker's age claims, not her then-nonexistent FMLA retaliation claim.

Next, the Bank's attorneys questioning of Rea regarding her termination was not "about the subject of [Rea's alleged] representation." Courts routinely hold that Rule 4.2 does not apply when attorneys speak to a represented party about matters *other* than the one a party has representation for. *See, e.g.*, *United States v. Ford*, 176 F.3d 376, 382 (6th Cir. 1999) (interpreting identical Kentucky rule, and holding that prosecutors who initiated contact with a represented defendant did not violate Rule 4.2 when the contact related to an "offense other than the offense for

-12-

which Defendant was indicted."); *Local 502 v. Cty. of Wayne*, No. 260202, 2006 WL 2547082, at *4 (Mich. Ct. App. Sept. 5, 2006) ("MRPC 4.2 was not implicated" when contacted party was "concurrently represented in *other* matters by defense counsel" but not the matter the contact related to.)

Here, Rule 4.2 did not apply because counsel was not questioning Rea as to her (then non-existent) FMLA retaliation claim. Rather, they were questioning Rea in her capacity as a witness to Janet Whiteaker's allegations of age discrimination. Indeed, the specific questions at issue in this motion—*i.e.*, why Rea was terminated, and her acts of record falsification—were directly relevant to the *Whiteaker* as they evidenced Rea's untruthfulness, bias, and lack of credibility as a witness in the *Whiteaker* matter. *See* Fed. R. Evid. 608(b), 611(b).

## IV. Even if Rule 4.2 applied, the proper remedy is not exclusion.

Finally, Plaintiff's proposed exclusion of Rea's testimony for the alleged violation of Rule 4.2 would be inappropriate. As one Court noted in declining to exclude evidence arising out of a purported Rule 4.2 violation, an "exclusionary policy frustrates truth and does not punish the ethical violation." *Weider Sports Equip. Co. v. Fitness First, Inc.*, 912 F. Supp. 502, 510 (D. Utah 1996). That is particularly so when any potential violation could only be chalked up to "a misjudgment on issues that are far from clear." *Plan Comm. In Driggs Reorg. Case v. Driggs*, 217 B.R. 67, 72 (D. Md. 1998) (rejecting suppression after Rule 4.2 violation).

Here, it is difficult to understand what Rea's counsel seeks to gain by exclusion. Under her own theory, the Bank's counsel had no reason to know about any "representation" until Rea's passing reference to a two-year old consultation halfway through her deposition. But she admitted to falsifying a record to Whiteaker's counsel *before* mentioning her November 2015 consultation. *See supra* at pp. 2-3. And Rea has consistently admitted to engaging in records falsification ever since her falsification was discovered in August 2015. *Id.* Suppressing her second deposition admission—the one she gave to Ms. Hardy under cross-examination—would not affect Rea's earlier, identical admissions. Any attempt by Rea to deny her records falsification would remain a transparent lie. And given that Rea's counsel cannot suborn perjury, there is no legitimate reason that Rea would give different answers to identical questions at her deposition in *this* case, merely because she had her counsel present. Suppression would serve no legitimate purpose here.

## Conclusion

Lori Rea falsified a bank record, and was terminated for it. She has admitted it time and time again. And those admissions are unambiguously admissible in evidence in this lawsuit. The Court should reject her counsel's attempt to suppress one—and only one—of those multiple admissions on a trumped-up and unsupportable claim of a Rule 4.2 violation. The Court should hold that Rea's deposition admissions to the Bank's counsel in the *Whiteaker* matter is admissible in this case,

-14-

and award the Bank its attorneys' fees incurred in drafting this motion. As noted above, Plaintiff's counsel were repeatedly warned of the frivolity of their rule 4.2 claim, to no avail, necessitating this motion.

Respectfully submitted,

KIENBAUM OPPERWALL
 HARDY & PELTON, P.L.C.

s/Thomas J. Davis
By:   Elizabeth P. Hardy (P37426)
        Thomas J. Davis (P78626)
Attorneys for Defendant
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
ehardy@kohp.com
Dated:  October 18, 2017              tdavis@kohp.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2017, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

s/Thomas J. Davis
Thomas J. Davis
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@kohp.com
(P37426)

-15-