UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI REA,

    Plaintiff

v.

BANK OF AMERICA, N.A.,

    Defendant.
_____/

Case No. 17-12388

Linda V. Parker
United States District Judge

Stephanie Dawkins Davis
United State Magistrate Judge

**ORDER GRANTING DEFENDANT'S MOTION *IN LIMINE* (Dkt. 16) and DENYING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER (Dkt. 19)**

A.    Procedural History

Plaintiff, Lori Rea filed the instant action on July 24, 2017 against her former employer, Bank of America (BOA or the Bank), claiming that her termination from employment in August of 2015 violated the Family Medical Leave Act (FMLA). Before the Court are the Bank's motion *in limine* and plaintiff's motion for protective order and/or order *in limine* which were referred to the undersigned by District Court Judge Linda V. Parker, regarding the use in this case of plaintiff's prior deposition testimony taken in a different lawsuit. (Dkts. 16, 19, 22, 24). Specifically, BOA seeks to use portions of Rea's deposition testimony from the case of *Whiteaker v. Bank of America*, Case No. 16-13202 (E.D. Mich.) to support its defense in this matter. Conversely, Rea seeks to preclude use of this prior testimony, maintaining that it is not admissible because

1

she was represented by counsel concerning her termination from the bank, that defendant's lawyers knew that she was represented by counsel, and as a result, should not have questioned her. BOA maintains that plaintiff was not represented at the time of her deposition in *Whiteaker*, and even if it were determined that she was represented, defense counsel did not know of the representation. The Court conducted a hearing on the matter, and for the reasons that follow, **GRANTS** defendant's motion *in limine* regarding plaintiff's deposition admissions and **DENIES** plaintiff's motion for a protective order.

    B.    Factual Background

Plaintiff worked as a Financial Center Manager for BOA until she was terminated in August of 2015 after 28 years with the Bank. Plaintiff's employment came to an end following an incident in which it is alleged that she and another employee recorded a false time on records related to the night deposit at the Bank. By way of explanation, many BOA financial centers offer a night depository box to accommodate bank customers who need to make after-hours deposits. According to BOA, bank policy provides that the night depository must be opened the next day, shortly before the Center opens, under "dual control" (i.e., by two employees working together). The dual control employees must also log the time that the vault is opened.

Rea was the financial center manager at the Bank's Highland/Milford

Center.  On August 4, 2015, Rea did not open the night depository until over two hours after the Highland/Milford Center's opening.  According to BOA, rather than acknowledging the late opening (which would have led to a lower score on an upcoming audit), Rea and assistant manager Amy Thickstun falsified the night deposit log.  Alerted to the falsification by another employee, BOA's corporate investigator obtained video surveillance of Rea and Thickstun opening the depository at 11:20 am and then signing the log book.  The log book entry, however, incorrectly indicates that the vault was opened and closed at 8:58 am.  BOA says Rea ultimately admitted that she falsified the log "to remain under audit guidelines."  (Dkt. 16, Ex. 1).  BOA fired both Rea and Thickstun on August 24, 2015.

After her termination, Rea filed an EEOC charge against BOA alleging age and sex discrimination.  The EEOC issued a right-to-sue letter on December 8, 2016, which expired on or about March 8, 2017 with no suit having been filed. (Dkt. 16, Ex. 2).  On June 9, 2017, the plaintiff (one of Rea's former subordinates at the bank) in *Whiteaker v. Bank of America*, 16-13202 (E.D. Mich.) deposed Rea. (Dkt. 16, Ex. 3).  At the deposition, Whiteaker's attorney, Jennifer Lord, questioned Rea first.  Early in Ms. Lord's examination, Rea admitted that she opened the night drop depository late, that she wrote the "wrong" time, and that she was terminated for allegedly "falsifying a record."  (Dkt. 16, Ex. 4, Rea Dep. at

8-9).  Later during Ms. Lord's examination, Rea consulted a notebook to answer questions, which led to Ms. Lord marking the notebook as an exhibit and walking Rea through the entries.  *Id*. at 23, 55 & Dep. Ex. 24.  When they got near the end of the notebook, Lord and Rea discussed entries dated between September 9, 2015 and November 24, 2015 which pertained to Rea's consultation with an attorney:

> Q. Okay. So these next two pages –
>
> A. Oh, this is about me, sent an inquiry to a lawyer's office regarding my termination to Bank of America. Then I had an appointment with them. Let's see. I called - - oh, I called Bank of America for my file, sent file to lawyer for review. I had a lawyer appointment. Lawyer advised to put in Civil Rights for age discrimination. You have to do it within six months. And then he seemed to think I had a case and wants a $3,000 retainer.
>
> Q. Did you ever file a lawsuit?
>
> A. No. No, not yet. I don't know. I don't know what I'm going to do.

(Dkt. 16, Ex. 4, Rea Dep. 66 & Dep. Ex. 24).  According to BOA, Rea made no reference to having consulted an attorney after November 2015, and also made no indication that she ever paid a retainer.

Later in the deposition, BOA's counsel, Elizabeth Hardy, cross-examined Rea.  *Id*. at 83.  Near the end of her examination, Ms. Hardy revisited the topic of Rea's termination, resulting in Rea's confirmation that she and her assistant manager "both engaged in falsification of a bank document," that it was an "error

4

in judgment," and that she did not "know of anyone who has engaged in falsification of bank documents as a branch manager who has not been terminated." *Id*. at 128-29.

A little over six weeks after her deposition in the *Whiteaker* case, Rea filed this lawsuit, claiming that BOA terminated her for applying for FMLA leave. (Dkt. 1, Pg ID 7). BOA's counsel avers that during the parties' Rule 26 conference on September 7, 2017, Rea's counsel, Alec Gibbs, was informed that Rea had been deposed in *Whiteaker*. (Dkt. 16, Ex. 6). According to BOA, Mr. Gibbs did not express concern or otherwise raise any objection on hearing that Rea had been deposed, and he did not claim during that call that his firm had "represented" Rea on June 9, 2017. The next day, BOA's counsel sent a letter enclosing the transcript, and requesting that Rea withdraw her claim in light of her admissions that she was fired for records falsification. *Id*.

Under Rea's version of events, shortly after she was terminated in August of 2015, she contacted her current counsel about the possibility of pursuing a claim for wrongful termination. He advised her he was willing to pursue the matter on her behalf and requested a retainer. (Dkt. 19, Ex. 1, p. 66). Plaintiff says she waited until the death of her parents, for whose care she was responsible, before pursuing the claim. Plaintiff's counsel avers that Rea emailed him on May 24, 2017 indicating she was ready to proceed, and that she scheduled an

5

appointment to both meet with counsel and sign the retainer agreement. (Dkt. 19, Ex. 3, Redacted email and Ex. 4, Declaration of Alec Gibbs). At the meeting, which occurred in June of 2017, plaintiff signed the retainer agreement and her case was filed on July 24, 2017. *Id*. On June 9, 2017, unbeknownst to her counsel, plaintiff was called on to testify at a deposition in Ms. Whiteaker's wrongful termination case. Plaintiff did not notify her counsel of the deposition and because he was unaware of the deposition, he did not appear and was not present during her testimony. (Dkt. 19, Ex. 4, Declaration of Attorney Alec Gibbs).

    C.    <u>Analysis and Conclusion</u>

Plaintiff maintains that her prior testimony is not admissible because BOA's counsel violated Michigan Rule of Professional Responsibility 4.2, "Communication With a Person Represented by Counsel," which provides as follows:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party whom the lawyer knows to be represented in the matter by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.[1]

---

[1] MRPC 4.2 was revised on September 20, 2017, and effective January 1, 2018 the word "party" was replaced with the word "person." The commentary following the Rule further explains, "This rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question." Though the parties briefed the issue of which term is controlling here, in view of the Court's conclusions concerning representation and knowledge, resolution of this question is unnecessary.

6

As set forth above, Rea maintains that she was represented on the matter of her termination when her deposition was taken on June 9, 2017. Thus, plaintiff contends that MRPC 4.2 precluded defense counsel from questioning her about her termination without the consent or presence of counsel. Rea insists that it is clear from the deposition testimony that defense counsel knew or should have known she was represented. As a result, BOA should be prohibited from using this testimony against her and profiting from such conduct. She also argues that the redacted May 24, 2017 email and defense counsel's declaration both support her claim that she was represented at the time of the deposition. On the other hand, BOA's counsel argues that plaintiff was, in fact, not represented at the time of the deposition; and even if it is determined that she was represented, defense counsel did not know of the representation, thus undermining any claimed violation of MRPC 4.2.

As an initial matter, the parties disagree as to whether exclusion is a proper remedy for violation of the ethical rules – namely exclusion of plaintiff's prior testimonial admissions. Thus, it is appropriate to address the court's authority in this regard. Federal Rule of Civil Procedure 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including…(A) forbidding the disclosure or discovery… and (D) forbidding inquiry into certain

matters, or limiting the scope of disclosure or discovery to certain matters." Additionally, Local Rule 83.20(j) provides that attorneys practicing in this court are subject to the Rules of Professional Conduct adopted by the Michigan Supreme Court – all of which have been codified in the Michigan Rules of Professional Conduct.

Notably, the deposition that plaintiff seeks to exclude here does not neatly fit into the proscription described in Rule 26(c). Plaintiff does not specifically claim annoyance, embarrassment, oppression, or undue burden or expense. And, as to her request for an *in limine* order, plaintiff has not cited any rule of evidence which would preclude use of her prior testimony based on a violation of Rule 4.2. Rather, plaintiff has characterized her request as a means "to prevent Defendant's exploitation of the benefit gained" from *violating* MRPC 4.2. (Dkt. 19, p. 5) Plaintiff has also claimed protection of the common law attorney-client privilege concerning portions of her prior testimony and argues that under Fed. R. Evid. 502 plaintiff did not waive the privilege; but to the extent that the privilege may apply, it would be limited to communications between plaintiff and counsel – not to the alleged admissions contained in the *Whiteaker* deposition. Notwithstanding the imprecise fit between plaintiff's desired relief and the procedural and evidentiary rules, this Court maintains inherent authority to "levy sanctions in response to abusive litigation practices." *Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir.

8

1993) (quoting *Roadway Express*, *Inc. v. Piper*, 447 U.S. 752, 765 (1980)). Furthermore, "'[C]ourts of justice are universally acknowledged to be vested by their very creation with power to impose silence, respect, and decorum in their presence, and submission to their lawful mandates.'" *Banner v. City of Flint,* 99 *Fed. Appx.* 29, 35 (6th Cir. 2004) (quoting *Anderson v. Dunn*, 6 Wheat, 204, 227, 5 L.Ed. 242 (1821)). Therefore, to the extent that any ethical violations by defense counsel may have resulted in the improper acquisition of evidence against plaintiff, it is within the court's power to provide a remedy for the same.

      1.      Attorney Representation

The question of whether ethical rules have been violated by an attorney practicing in federal court is a question of federal law. Federal courts may, nevertheless, look to the state rules of professional conduct for guidance. *El Camino Resources*, *Ltd. v. Huntington Nat. Bank*, 623 F.Supp.2d 863, 876 (W.D. Mich. 2007) (citations omitted). And, as noted above, Local Rule 83.20 expressly requires that attorneys practicing in this district adhere to the MRPC. Thus, in determining whether defense counsel's deposition questioning about Rea's termination from BOA in the *Whitaker* case violated MRPC 4.2, it is helpful to consider how Michigan courts have determined whether an individual is considered "represented" for purposes of the rule.

To be sure, once a client has officially retained an attorney to perform legal

9

services, the client is represented. *Chapman v. Sullivan*, 161 Mich. App. 558, 561-62, (1987) (holding that lawyer's representation lasted from time he was "retained by plaintiff to perform specific legal service" until that work ended without retention for further representation on other matters). The question then becomes, is there any point before actual retention of an attorney where it can be said that a client is represented for purposes of Rule 4.2? As noted in defendant's brief (Dkt. 16, p. 7), the Preamble to the MRPC touches on the point at which the attorney-client relationship begins, where it states, "[t]he duties flowing from the client-lawyer relationship attach only after the client has requested the lawyer to render legal services and the lawyer has agreed to do so." MRPC 1.0, Preamble; s*ee also* Restatement (Third) of the Law Governing Lawyers §§ 14, 31 (2000) (legal representation occurs when a person expresses "intent that the lawyer provide legal services" and lawyer consents; it ends, among other reasons, when "the lawyer has completed the contemplated services."). Thus, of paramount consideration in determining whether legal representation exists is whether the attorney has agreed to provide legal services following a person's expression of intent to engage the lawyer for that purpose. There appears to have been little, if any, litigation directly addressing when the commencement of attorney representation occurs.

Plaintiff relies on the unpublished decision in *Ridge v. National Standard Co.*, 1996 U.S. Dist. LEXIS 16308, (E.D. Ky. 1996) for the proposition that

10

admissions made without the benefit of counsel should be excluded to satisfy Rule 4.2 However, the central focus of that case was whether non-managerial employees who plaintiff sought to informally interview *ex parte* might provide testimony that could be characterized as an admission by their supervisor and because of his managerial role also by the corporate defendant. Both the supervisor and the corporation were indisputably represented in *Ridge*, thus to the extent that the statements of other employees might be deemed to bind the corporation, the court ruled that the communication was improper. *Ridge* at *11. The case is largely inapposite. The instant matter does not involve a corporation or statements of others that might be deemed an admission by plaintiff. Further, the case does not involve the more pertinent question here of whether plaintiff's consultation for legal services concerning her termination meant that she was represented for purposes of Rule 4.2. On this issue, plaintiff has cited no persuasive authority suggesting that she was, in fact, represented on June 9, 2017. And, the facts do not convince the undersigned that she was.

    First, plaintiff's reliance on a consultation from almost two years preceding the deposition to support her claim of representation is insufficient. To the extent that representation requires the client's expression of an intention to retain the lawyer to provide legal services, the 2015 consultation falls short. Indeed, when asked at her deposition whether she ever filed a lawsuit regarding her termination,

11

plaintiff openly relayed her indecision, stating, "No. No, not yet. I don't know. I don't know what I'm going to do." (Dkt. 16-5, p. 66). The fact that she had consulted an attorney about her options, but had made no decision on whether to take any legal action, does not suggest that she had expressed an intention to retain the attorney to provide legal services. Nor does it suggest that any legal services were being rendered.

The additional documents that plaintiff has attached to her motion similarly leave more to be desired. The May 24, 2017 email which has as its subject line "Bank FMLA case" shows at best that plaintiff communicated with plaintiff's counsel. (Dkt. 16-3). It may even be inferred from the subject line that the communication related to a contemplated FMLA claim against BOA, as two months later, such a suit was initiated. What it does not demonstrate however, is that plaintiff expressed an intention to retain counsel's services or that she was represented by counsel as of May 24, 2017 or at any time preceding the June 9, 2017 deposition.[2] Mr. Gibbs' declaration stating that plaintiff's May 24, 2017 email indicated that she was ready to proceed and to sign a retainer agreement, does not square with plaintiff's own sworn testimony from only two weeks later

---

[2] Due to the heavy redaction of the May 24, 2017 email (Dkt. 19-3), absent an *in camera* review, which was not requested or offered by plaintiff, the undersigned can draw no definitive conclusion as to the content of the communication. In view of its later conclusion that defense counsel did not know of any representation even if it existed, the Court declines to order an *in camera* review on its own.

12

wherein she stated that she had not decided whether she would pursue a claim. And notably, while Mr. Gibbs' declaration indicates that he had intermittent communication with plaintiff between her November 2015 consultation and May of 2017, the declaration is ambiguous as to when in June plaintiff's appointment wherein she is alleged to have signed a retainer agreement, occurred. (Dkt. 16-4, ¶ 2). Without some other proof documenting plaintiff's express intention to retain counsel for services before June 9, 2017, the omission of the specific appointment date is damning, as an appointment date pre-dating the deposition could have provided stronger evidence of representation at the time of the *Whiteaker* deposition. This is especially so since the actual retainer agreement was not signed until June 28, 2017 – almost three weeks after the deposition. (Dkt. 18, Ex. 1). As it stands, since the appointment was allegedly to sign the retention agreement, it follows that the date of the meeting was likely June 28, 2017 – not before. On the record before the court, the undersigned is unable to conclude that plaintiff was, in fact, represented on June 9, 2017 – the date of the deposition testimony which plaintiff seeks to preclude.

      2.    Knowledge of Representation

Even if the Court were to conclude that plaintiff was represented by counsel as to her termination from BOA by the date of the *Whiteaker* deposition, plaintiff's claim that defense counsel knew of the representation, as required under MRPC

13

4.2, is not well-supported. As discussed above, merely consulting with counsel without clearly expressing an intention to retain the attorney for legal services does not amount to representation. Therefore, plaintiff's testimony that she talked to an unnamed attorney in November of 2015 did not, in and of itself, suggest that she was in fact represented. The other information that defense counsel knew at the time lent no additional support for the notion that plaintiff had counsel for her FMLA claim. Indeed, beyond knowledge of that initial consultation, which plaintiff indicated concerned potential age and sex discrimination claims, by the time of the deposition, defense counsel only knew the following: (1) plaintiff had initiated an EEOC complaint; (2) the EEOC had issued a right-to-sue letter that had expired months before the deposition; (3) Rea had not initiated any lawsuit; and (4) Rea did not indicate that she had retained counsel concerning her termination. Plaintiff suggests her testimony about the November 2015 attorney consultation, obligated defense counsel to inquire further on the issue of attorney representation. While an abundance of caution may or may not have supported such an inquiry, authority suggesting that inquiry was required in this context is scant. Plaintiff notes the commentary to the American Bar Association Model Rule 4.2, which states:

> The prohibition on communications with a represented person only applies in circumstances where the lawyer knows that the person is in fact represented in the matter to be discussed. This means that the lawyer has actual

14

> knowledge of the fact of the representation; but such <u>actual knowledge may be inferred from the circumstances</u>. See Rule 1.0(f). Thus, the lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious. [Emphasis supplied].

Plaintiff argues that the underlined language above suggests an objective standard that the attorney "knew or should have known" of the representation applies. In the view of the undersigned, plaintiff's interpretation seems to support imputing knowledge rather than inferring it. While the distinction may appear to split hairs, it is consequential. Taking the plain meaning of the commentary,[3] if it can be deduced through reasoning and logic from reviewing the surrounding circumstances that the fact of representation was actually known, then communication with the represented party is prohibited. Indeed, later in the commentary, it is observed that "[u]ntil 2002, the comment to Rule 4.2 went on to say that 'such an inference may arise…where there is substantial reason to believe that the person…is represented.' That sentence was deleted in 2002 because equating knowledge with 'substantial reason to believe' was thought 'inconsistent with the definition of 'knows' in Rule 1.0(f), which requires actual knowledge and involves no duty to inquire."[4] Thus, while the ABA Model Rules and

---

[3] The term infer has been defined as to "deduce, conclude, judge, gather to arrive at a mental conclusion…arriving at a conclusion by reasoning from evidence." Merriam-Webster Dictionary.

[4] Some courts have suggested that a duty to inquire does arise when information within an attorney's knowledge would lead to a conclusion that a person is represented. *See e.g.*, *In re*

15

accompanying commentary are themselves merely advisory and not binding on the court, they do not support the analytical framework which plaintiff advances. And, contrary to plaintiff's argument, her testimony that she was undecided about whether to pursue a lawsuit would logically lead to the conclusion that she had not expressed an intention to retain counsel, given the passage of time since the consultation and the continued indecision. Plaintiff makes much of the fact that plaintiff and plaintiff's counsel communicated by email on May 24, 2017, but this is a fact about which defense counsel was unaware at the time of the deposition. Therefore, it does not contribute to a picture of knowledge. Nor is the undersigned convinced under the circumstances presented that defense counsel's lack of further inquiry about the existence of attorney representation resulted in a violation of MRPC 4.2.

### 3. Attorney-Client Privilege

In her motion, plaintiff maintains that her testimony addressing her initial consultation with an attorney about her termination from BOA was subject to the attorney-client privilege; and she did not waive it by testifying about its substance. Defendant argues that this issue is not ripe for consideration, as it has not sought to compel information concerning the consultation and has not asked questions about

---

*General Motors*, 2016 WL 1441804 (S.D.N.Y. April 12, 2016) (Attorney in multi-district litigation with various counsel representing different members within the putative class knew the names of all class members, and had access to PACER information about who represented a particular class member whom he had contacted.).

16

it. At oral argument, BOA indicated that it does not intend to do so. Because defendant has not sought to use the subject testimony, the undersigned agrees that it is not ripe for consideration at this juncture. Nevertheless, the undersigned makes the observation that the attorney-client privilege attaches to any communication between an individual and an attorney made for the purpose of seeking legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 388-89 (1981). Thus, even when communications are made during attorney consultations that do not result in the retention of an attorney, the communication itself is privileged. *Banner v. City of Flint*, 99 Fed. Appx. 29, 36 (6th Cir. 2004) ("When a potential client consults with an attorney, the consultation establishes a relationship akin to that of an attorney-client privilege…"); citing *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) ("(1)Where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) was made in confidence, (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) unless the protections is waived."). And, the party seeking the legal advice does not waive the privilege by disclosing its contents, unless the waiver is deemed to have been intentional. *See* Fed. R. Evid. 502(a)(1). The Court need not conclude whether plaintiff made an intentional waiver as to the November 2015 consultation at this juncture, and thus declines further comment.

17

For all of the foregoing reasons, defendant's motion *in limine* regarding plaintiff's deposition admissions in *Whiteaker v. Bank of America* is **GRANTED** and plaintiff's Motion for Protective Order is **DENIED**.

**IT IS SO ORDERED**.

The parties to this action may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). A party may not assign as error any defect in this Order to which timely objection was not made. Fed.R.Civ.P. 72(a). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in full force and effect unless and until it is stayed by the magistrate judge or a district judge. E.D. Mich. Local Rule 72.2.

Date: June 26, 2018
s/Stephanie Dawkins Davis
Stephanie Dawkins Davis
United States Magistrate Judge

### CERTIFICATE OF SERVICE

I certify that on June 26, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov