# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

LORI REA,

      Plaintiff,

v.

BANK OF AMERICA, N.A.,

      Defendant.

Case No. 4:17-cv-12388

Honorable Linda V. Parker

Magistrate Stephanie Dawkins Davis

---

LAW OFFICE OF GREGORY T. GIBBS
By:  Gregory T. Gibbs (P26440)
      Alec S. Gibbs (P73593)
717 S. Grand Traverse
Flint, MI 48502
(810) 239-9470
greggibbs51@sbcglobal.net
gibbsale@gmail.com

LAW OFFICE OF ANN A. LERCHE
By:  Ann A. Lerche (P33331)
717 S. Grand Traverse
Flint, MI 48502
(810) 239-9470
annlerche@gmail.com

*Counsel for Plaintiff*

KIENBAUM OPPERWALL
  HARDY & PELTON, P.L.C.
By:  Elizabeth P. Hardy (P37426)
      Thomas J. Davis (P78626)
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@kohp.com
tdavis@kohp.com

*Counsel for Defendant*

---

**Declaration of Deborah S. Salomon**

1.     I make this declaration based on personal knowledge of the facts stated herein, and am able to so testify under oath if called upon to do so.

2.     I am currently employed as a Vice President/Senior Internal Investigator for Bank of America. I have held this position for 25 years. My job is to investigate internal violations of Bank of America policies and procedures, including potential criminal activity.

3.     When I am assigned a new investigation, I begin a day-to-day journal of my investigative steps, and I enter my activities in that journal as I complete them. Then, at the end of my investigation, I complete a summary narrative of the investigation which is the final record of that investigation. These investigative documents are records (1) made at or near the time by – or from information transmitted by – someone with knowledge; (2) kept in the course of Bank of America's regularly conducted activity; and (3) made as a regular practice of Bank of America's business activity. Attached as Exhibits 1 and 2 to this declaration are my Journal and Narrative and regarding the Lori Rea investigation.

4.     On August 5, 2015, Bank of America's internal investigations group received a potential Falsification of Records case arising out of the Highland/Milford Financial Center in Highland, Michigan, based on a report made by teller Roxanne Magnusson to her Operations Market Manager Stacey Fabrie. Falsi-

-2-

fication of bank records or bank documents is considered a very serious offense by the Bank.

5.      Magnusson alleged that Highland/Milford Financial Center Manager Lori Rea, and Highland/Milford Financial Center Assistant Manager Amy Thickstun had falsified a night deposit log, recording that they had opened the vault at 8:58 am, rather than the true time that it was opened, which was around 11:00 am. Ms. Magnusson also reported that the reason for the falsification was to ensure that there would be no finding on a Banking Center Control Review (BCCR) audit that the vault was opened after the branch had opened, which would violate policy. A copy of the night depository policy is attached as Exhibit 3.

6.      After being assigned the case, I asked Operations Market Manager Stacey Fabrie to provide me with a copy of the night deposit log from August 4, 2015. A copy of the night deposit log is attached as Exhibit 4 to this declaration. It shows that Ms. Rea and Ms. Thickstun signed the night depository log, and indicates that the vault was opened and closed at 8:58 am.

7.      I also confirmed that the Highland/Milford Financial Center's surveillance cameras covered the night deposit safe, and reviewed the surveillance footage. The surveillance video confirms that Ms. Rea and Ms. Thickstun opened the vault together at 11:20 am, and closed it at 11:22 am. Still photos from the surveil-

-3-

lance videos showing Ms. Thickstun (left) and Ms. Rea (right) opening the vault and signing what appears to be the night depository log are attached as Exhibit 5.

8.      On August 19, 2015, I interviewed Ms. Rea. The notes of that conversation are set forth in Exhibit 1, at page BOA 242. Ms. Rea admitted that she was aware that policy was to open the night deposit box prior to the financial center's opening, but that it was not opened on time on August 4, 2015. She admitted that she wrote down 8:58 am on the night deposit log because there was an audit scheduled for August 5, 2015 and she wanted the log to be in compliance with audit. Ms. Rea also wrote a voluntary statement again confirming that she had falsified the time on the night drop log, and did so to "remain under audit guidelines." These voluntary statements are not shared with Operations Market Managers, but are instead maintained in the official investigation record. Rea's statement is attached as Exhibit 6.

9.      On August 20, 2015, I interviewed Ms. Thickstun, both about the night drop log and another incident regarding a debit card log. The notes of that conversation are set forth at Exhibit 1, at page BOA 243. Ms. Thickstun likewise admitted that she was aware of night drop procedures, accepted responsibility and stated that there was no excuse for not opening the vault on time that day, and that they put the false time in the log to avoid an audit issue. Ms. Thickstun's written statement is attached as Exhibit 7.

10.     Later on August 20, 2015, I called Stacey Fabrie to discuss the interviews. She believed that Rea and Thickstun should be terminated for their violations. Although the decision was Ms. Fabrie's to make, I agreed with her decision. Records falsification, particularly by a manager who is trying to conceal policy violations, is a very serious offense and warrants immediate termination. I have investigated many instances of records falsification in my 25 years as a Bank investigator. I am unaware of any case where a manager was found to have falsified a record, but then was not terminated.

11.     On August 24, 2015, I had a call with Vince Dubman from the Bank's Advice & Counsel department. I discussed the case with him. Mr. Dubman also agreed with the recommendation that Ms. Rea be terminated. We brought Stacey Fabrie onto the call to discuss, and it was determined that the terminations would be administered that day. I completed the Narrative after the call, ending my involvement in the matter. I was not present for the termination.


I declare under penalty of perjury that the foregoing is true and correct.


Executed on November 20, 2018

Deborah S. Salomon

# EXHIBIT 1

**to**

**Declaration of Deborah S. Salomon**

FRD-2015080155033
Case made 8/5 Rec'd. 8/6 - Due:  8/26
.
Falsification of Bank Records
Night Depository Log
.
Assoc's.:
Lori A. Rea
***Prev. case:  CSI-122922 Aug. '12 - Unauth. acct. access - No evidence - No further
action***
NBKW2EB 27769503 7-1-91 FT FCM Band 5
.
Amy L. Thickstun
***No prev. cases***
ZKNM8ZY 20939391 6-12-13 FT TOS Band 7
.
Roxanne Lynn Magnusson
***No prev. cases***
ZKIET96 25648107 8-18-14 FT Sr. Teller (POD Teller) Band 8
.
Rea and Thickstun:
Highland/Milford FC #369
1820 S. Milford Rd.
Highland, MI. 48357
OMM:  Stacie L. Fabrie
(312)-933-2032
.
Magnusson:
Assigned at the Lyon Towne Center FC #283
30786 Lyon Center Dr. E.
New Hudson, MI. 48165
Reports to:  Heather D. Subran-Marsh
.
Reported by Magnusson to Fabrie:
On 8/4, while working at Highland/Milford, was asked to sign ND log as verifier
Magnusson signed that items were processed & because Rea felt she couldn't say no to
Rea
the ND was not opened until approximately 11a.
The time written on the log was before 9a. input intentionally so there would be no
BCCR finding
Case submitted by Fabrie for review of surv. to find out actual time ND opened
.
8/6
Emailed Fabrie req'd. copy of the 8/4, ND log
Fabrie responded that she didn't have it but could have Rea fax it
Req'd. she not have Rea fax it as we don't want to tip her off

BOA 00240

Asked if she would be at the FC to fax or to have Magnusson fax it
Fabrie stated Rea on vacation next week so will have it faxed then
.
The Cashroom surv. view captures the ND safe
.
August 7, 2015
Added Lori A. Rea and Roxanne Lynn Magnusson with Enrichment - Alert #97260
.
August 13, 2015
Reviewed surv.
On 8/4, the ND was opened at 11:20 & closed at 11:22
Since Fabrie sent the rest of the wks. logs, also reviewed surv. for those dts. - The ND
was opened/closed at the times listed
Emailed Fabrie to adv. - Stated will conduct telephone interviews next wk. - Inq'd. on
what FC's Magnusson is working at & on what dts. next wk. & what dts. Thickstun &
Rea have off next wk.
Saved surv. clip in Salomon folder in cinvestigations drive
.
August 14, 2015
Fabrie responded on the following schedules:
Rea:  M 12-cl., T-W 8:30-5:30, Th. 8:30-noon, F 8:30-6:30
Thickstun:  M 9:30-5:30, T 8:30-5:30, W off, T 8:30-5:30, F 8:30-6:30
Magnusson:  M Lyon Towne Center 8:30-5:15, T Milford, W Lyon Towne Center, T-F
vacation
.
Fabrie also reported that on 8/11, Magnusson went into dual control before 1p. w/
Yesko to get ATM/Debit cards for Yesko - When she went to record on the log, Yesko
told her not to worry about it & he'd take care of it later - Fabrie pulled a copy of the log
which is signed by Yesko & Thickstun - Again, Magnusson did not want an argument so
she didn't sign & called Fabrie right away

August 18, 2015
Email to Subran-Marsh (copied Fabrie) re. telephone interview of Magnusson on 8/19,
9:30 a.m. at which time she'll be at the Lyon Towne Center FC
FCM there is Nicole Dietrich - AM is Erick Eldridge - Dietrich on vacation this week
Fabrie responded that w/ the new re-org. Magnusson reports to her
Inq'd. if Fabrie wanted to adv. Eldridge or if she wanted me to
Scheduling for 9:30 a.m. 8/19
.
Added Yesko w/ Enrichment - Alert #99327
Sean J. Yesko
***No prev. cases***
ZKMVCI9 20525682 9-3-14 FT PB Band 7
Reports to Marie Warner
.
August 19, 2015

Only assoc. involved in this case that has a HR case owner is Thickstun - Vince
Dubman
.
Fabrie will let both Eldridge & Warner know
Sent invite to Rea for 11:30 this morning - Accepted
.
Interviewed Magnusson - POD Sr. Teller - Works btwn. New Hudson, Highland/Milford
& Lyon Towne Center
.
On 8/4, Thickstun stated OMG forgot to do ND - Log put before Magnusson sometime
after lunch by Thickstun along w/ the receipts to sign as verified by - Magnusson signed
as verifier understanding that she only verified the bag/envelopes were processed -
Saw right away the time was not accurate - Didn't question - When questions things at
Highland/Milford given answer "that's the way we do it here" - Thought about it all night -
Told Dietrich about it the next morning - Dietrich called Fabrie to advise - Magnusson
stated policy for ND is that it is opened before the FC opens - Believes time written was
before 9a. so wouldn't get in trouble for not opening ND as to policy
.
On 8/11, Thickstun asked Magnusson to open ATM/Debit card safe w/ Yesko -
Thickstun was only teller w/ line of cust's. - Magnusson key opened & Yesko combo.
opened - Yesko took out 20 cards - Magnusson verified 20 taken out & 110 remained -
Safe locked - Yesko immediately back to his cust. who was waiting for a card -
Magnusson stated to Thickstun that the log needed to be completed - Thickstun stated
"don't worry about it" - "I'll take care of it later" - You'll be late getting to New Hudson" -
Magnusson stated she was already late leaving the Highland/Midford FC - Didn't want
to be insubordinate to Thickstun & didn't know what to do so called Fabrie on drive from
Highland/Milford to New Hudson - Fabrie thanked Magnusson for the call & stated she
did the right thing - Req'd. call if anything else arises
.
Magnusson stated feels as if it's just not right at Highland/Milford
.
Interviewed Rea - She has key - Thickstun has combo - Aware that policy states open
ND prior to FC opening - Didn't get to it in the a.m. - What do we do; not open it or open
& process dep's. - Opened to process dep's. - Placed 8:58 a.m. to be in compliance with
Audit - BCCR audit was the next day 8/5 - Scored 98.2 - Marked down due to a teller
having over the $4K limit in top drawer - No other findings - Unsure if ND included w/
BCCR - If actual time had been written, would have been a finding or a coaching - Many
times due to staffing does not have a 2nd person for ND so log waits until the next day
& the time of 8:58 is also written
.
Scheduled 1:30 p.m. today to interview Yesko
Scheduled btwn. 10-10:30 a.m. to interview Thickstun tomorrow 8/20
Scheduled Mon. 8/24, 9a.-10a. w/ Vince Dubman to discuss case - Accepted
.
Interviewed Yesko - Needed ATM/Debit card for cust. at desk who had already been
waiting a long time - Went into safe w/ Magnusson - After taking what needed &

verifying what was left, went back to cust. & completed log later in day - Did not complete at that time because wanted to get back to cust., Magnusson was leaving for other FC & Thickstun was busy w/ cust's. on TL - Time log completed was unknown
.
August 20, 2015
Interviewed Thickstun - Ack. clear understanding of COE - Verbalized proper ND procedures - Verbalized correct definition of dual control - Recalled opening the ND late on 8/4 - 8:58 time written per PRO that ND get opened prior to FC opening - Audit issue - Should have written correct time - Thickstun stated no excuse as there were 4 people present on 8/4 - On 8/11, Magnusson was leaving for other FC & FCM at Lyon Towne Center had emailed Thickstun earlier in the day that needed her on time - Thickstun was only teller w/ line of cust's. in lobby & d/u & Yesko was only PB w/ cust's. waiting - Did adv. Magnusson she'd take care of log later but in fact wished Magnusson just got the log out of the teller drawer that she has access to & completed it herself - Accepted responsibility for wrongdoing - As leader should have ensured proper completion on both occasions - Stated obviously Magnusson submitted issues (stated not at liberty to reveal) - Thickstun stated while she realizes what she did was wrong, stated Magnusson has complained how not happy w/ roll or working at the Highland/Milford FC - Doesn't like constant change of schedule & recently denied vacation time - Feels retaliating because not happy
.
Discussed all interviews w/ Fabrie - Fabrie believes the following should be adm'd.:
Magnusson should receive only a Coaching or Verbal as did sign the ND log & did not insist on Card log being completed
Yesko should receive some disciplinary action but not term. as did not insist on Card log being completed right away & then allowed Thickstun to dual sign
Rea & Thickstun, both in leadership roles & should have known better, terminations
Adv'd. have 9a. meeting Mon. 8/24, w/ Dubman to discuss & will keep her posted
.
August 24, 2015
Discussed case with Dubman - Term's. for both Rea & Thickstun - FWW for Yesko - Coaching for Magnusson
Brought Fabrie onto call - Along w/ Marie Warner, Yesko reports to her, all to be adm'd. today
Sean:  1-447909451
Amy:  1-447909467
Lori:  1-447909472
.
Disciplinary actions administered
.
Narrative
PRISM
No SRS or EDIR
Subm. for review, approval & closure (day 19)

# EXHIBIT 2

## to

## Declaration of Deborah S. Salomon

On August 5, 2015, Bank of America, N.A. (BANA) Internal Investigations Group (IIG) received this Falsification of Bank Records case as it related to a Night Depository (ND) log involving its associates Lori A. Rea (Rea), Amy L. Thickstun (Thickstun) and Roxanne Lynn Magnusson (Magnusson).  The incident took place on August 4, 2015, at the Highland/Milford financial center located at 1820 S. Milford Rd. Highland, MI. 48357. All three were working in a full-time capacity; Rea the financial center manager, date of hire July 1, 1991, Thickstun the Teller Operations Specialist, date of hire June 12, 2013, and Magnusson the Senior Teller, date of hire August 18, 2014.
.
Magnusson reported that while the opening/closing time written on the ND log was before 9:00 a.m. (which is BANA policy); it wasn't actually opened/closed until approximately 11:00 a.m.  Magnusson reported she was asked by Rea to sign the ND log as the verifier which she did because all the items were processed and because she felt she could not tell the manager no.  Magnusson reported that the time written was intentional to ensure there would be no finding on a Banking Center Control Review (BCCR) audit for opening/closing the ND after the financial center was already open.
.
Review of the ND log revealed the time opened and closed to be 8:58 a.m.
.
Review of surveillance revealed the ND to have been opened at 11:20 a.m. and closed at 11:22 a.m.
.
On August 14, 2015, IIG learned of another incident reported by Magnusson.  On August 11, 2015, Magnusson was asked by Thickstun to access the dual control safe where ATM/Debit cards are stored with full-time Personal Banker Sean J. Yesko (Yesko), date of hire September 2, 2014.  Magnusson did as requested but when she went to record the ATM/Debit cards on the log, Thickstun told her not to worry about it and she would take care of it later.
.
On August 19, 2015, an associate from the IIG conducted interviews of Magnusson, Rea and Yesko.  On August 20, 2015, IIG interviewed Thickstun.  Each of Rea and Thickstun acknowledged a clear understanding of BANA's Code of Ethics.  Each of Rea and Thickstun acknowledged a clear understanding of BANA's Night Depository procedures and each of Yesko and Thickstun acknowledged a clear understanding of proper completion of required logs.
.
Magnusson stated:
1.  On August 4, 2014, sometime after lunch, she was asked to sign the ND log as having verified that all bags/envelopes had been processed.
2.  She saw right away that the time written on the log was not accurate.
3.  She signed as verifier because the bags/envelopes were processed.
4.  Even though she saw that the time was not accurate, she did not feel comfortable confronting either Rea or Thickstun about the matter.
5.  On August 11, 2015, prior to leaving the Highland/Milford financial center to work at the Lyon Towne Center financial center (located at 30786 Lyon Center Dr. E. New

BOA 00244

Hudson, MI. 48165), Thickstun asked her to access a dual control safe with Yesko so he could obtain ATM/Debit cards.

6.  She did as asked and Yesko immediately went back to his customer.

7.  She asked Thickstun about completing the log to which Thickstun stated she was already late getting to the Lyon Towne Center financial center and that she'd take care of it later.

8.  Again, she did not feel comfortable confronting Thickstun about the matter.

.

Rea stated:

1.  Even though it was outside of policy, they decided to open the ND after the financial center had already opened so as not to delay any customer deposits.

2.  The time of 8:58 a.m. was written to be in compliance with Audit.

.

Yesko stated:

1.  He needed an ATM/Debit card for the customer at his desk who had already been waiting a long time and another customer was waiting.

2.  He went into the dual control safe with Magnusson, took what was needed, verified what was left and went back to his customer.

3.  Even though Thickstun did not access the dual control safe with him, he and Thickstun completed the log later in the day.

.

Thickstun stated:

1.  Even though four associates were present on August 4, 2015, they forgot to access the ND prior to the financial center opening.

2.  The time of 8:58 a.m. was written to be in compliance with Audit.

3.  On August 11, 2015, after Magnusson signed off, she was the only associate working the teller line and drive through window and she was busy.

4.  That she asked Magnusson to access a dual control safe with Yesko so he could obtain ATM/Debit cards.

5.  That she did tell Magnusson she'd take care of logging the ATM/Debit cards later.

6.  That as a leader, she should have ensured proper completion of both the ND and ATM/Debit card logs.

7.  That she accepted responsibility for her wrongdoing.

.

BANA's Advice and Counsel was engaged for employment outcome discussions.  Rea and Thickstun are no longer employed with BANA.  Yesko and Magnusson remain employed with BANA.

.

In summary:  On August 4, 2015, Rea and Thickstun falsified the time the ND was opened/closed to avoid an audit issue.  On August 11, 2015, Thickstun signed a log stating she accessed a dual control safe with Yesko, however, she did not.

.

BANA suffered no exposure or loss resulting from this matter.

# EXHIBIT 3

**to**

**Declaration of Deborah S. Salomon**

**CONFIDENTIAL - PRODUCED PURSUANT TO PROTECTIVE ORDER**

# Removing Night Depository Contents

REVISED: 16 Mar 2015
VERSIONS: Financial Center

## Overview

Night depository service allows customers to make deposits at any time of the day, including after business hours, using the financial center's night depository. The contents are held in the night depository vault until they are removed. This module contains requirements and procedures associated with removing contents from the night depository.

- Use the links below to quickly access the information you need in this module:
  - Requirements
  - Forms Required
  - ⓘ myTasks Procedure: Removing and Logging Contents of the Night Depository
  - Revision History

## Requirements

- The night depository vault is required to be opened once per business day, under dual control, before the financial center lobby opens.
  - Deposits removed from the night depository vault receive same day credit.
  - Deposits placed in the night depository vault after the night depository vault has been opened, deposits removed and then closed will not receive credit until the following business day.

ⓘ IMPORTANT! Financial centers are not required to open the night depository vault on Saturdays, but may do so at the discretion of the financial center manager or designee to get a head start on the next business day's work. A separate Night Deposit Log must be completed and all standard Night Deposit and QBD processing procedures must be followed.

- Financial centers should attempt to open the night depository vault as close to the time the financial center lobby opens as poss ble, providing customers with time to make deposits before the lobby opens, yet providing associates enough time to perform required procedures. Times may vary for financial centers due to staffing and/or other circumstances.
- Customers may place their deposits in the following items when using the night depository:
  - Plastic, two-pocket post verification bags, i.e., Quick Business Deposits (QBDs)
  - Single pocket bags
  - Canvas Bags (grandfathered customers or exception customers approved by Market Administration)
  - Envelopes
  - Zipper pouches
- The two associates opening the vault are required to be present and in control of the vault contents throughout the entire process, to include:
  - During the process of removing and logging the night deposit bags and envelopes,
  - Closing the vault, and
  - Distributing the night deposit bags/envelopes to individual processing tellers.
- A new Night Depository Vault Opening/Record Log is required to be completed each time the night depository vault is opened.
- Deposits received over-the-counter are not recorded on the Night Depository Vault Opening/Record Log.

Return to Top

## Forms Required

- Night Depository Vault Opening/Record Log (00-14-2898NSBW)

## Procedure: Removing and Logging Contents of the Night Depository

Using **dual control**, complete the following steps to remove and log the contents of the night depository.

ⓘ IMPORTANT! The two associates (Dual Control Associate A and Dual Control Associate B) that sign the Night Depository Vault Opening/Record Log are certifying that they have:

- Been assigned access in myKeys, or the Key and Combination Control Log (00-19-0518NSB), to the Night Drop Vault, and
- Opened and closed the vault, and maintained dual control, until either:
  - The bags were assigned to the processing tellers,
    Or
  - Stored in the dual control vault until given to the assigned teller.

| Step | Action |
|------|--------|
| 1 | Open the night depository vault. Ensure that one associate does not observe the combination entered by the other associate. |

**CONFIDENTIAL - PRODUCED PURSUANT TO PROTECTIVE ORDER**

| | |
|---|---|
| 2 | Record the financial center cost center number, date, and time the vault was opened on a new Night Depository Vault Opening/Record Log (00-14-2898NSBW). |
| 3 | Examine the inside of the night depository vault and entry chute for evidence of tampering and jammed bags. <br><br> • If tampering is evident, close the vault and immediately contact Security Operations/Analysis Command Center (SOACC) |
| 4 | Remove the contents of the vault. |
| 5 | Count the total number of bags and the total number of envelopes/non-locking zipper bags removed from the vault and record the totals on the Night Depository Vault Opening/ Record Log. <br><br> • Only record the bag and envelope/non-locking zipper bag totals. Do not list the bags until step 8. <br> • **Non-locking** zipper bags should be included in the **envelope** count. Do not count as a bag. <br> • If no contents were found in the night depository vault, write "None" or "Ø" in the "Total # of Bags" and "Total # of Envelopes" fields. <br><br> **Note:** If your customer includes multiple deposits in one bag, envelope or pouch, the two persons removing contents from the night depository are **not** to open the bag, envelope or pouch to count the multiple deposits. The bag, envelope or pouch is to be counted on the Night Deposit Log as **one** item. Further, when the bag, envelope or pouch is assigned to a teller for processing, the teller is not required to go back and list the multiple deposits on the log. When appropriate, a representative of the financial center should instruct your customer to place one deposit per bag, envelope or pouch. If your customer uses QBD bags, provide your customer with the Quick Business Deposit Preparation Instruction s (00-35-4810NSB). |
| 6 | Inspect the interior of the vault to verify that the vault has been emptied. <br><br> ⓘ **IMPORTANT!** <br><br> • If your vault is equipped with a theft device, keep the theft device in the vault. For the purpose of this procedure, the theft device is considered part of the night depository. The vault is considered empty when all night deposit bags, envelopes and other customer deposited items have been removed. <br> • When inspecting the interior of the vault, do not stick your hands or head up in or around the chute in order to avoid possible injury. |
| 7 | Close the vault. Record the time the vault is closed on the Night Depository Vault Opening/Record Log. |
| 8 | Complete the remainder of the Night Depository Vault Opening/Record Log. <br><br> • List all bags removed from the night depository vault on the log by their account name/title and bag number as required. <br> • Quotation marks (ditto marks) **may** be used in the Account Name/Title column if listing multiple bags for the same account. Ensure the account/title is clearly listed at least once and it is clear that the subsequent, multiple bags listed belong to the account/title listed. <br> • If one log is completed, number the page "1 of 1". If multiple logs are required, number each page as appropriate (e.g., "1 of 2", "2 of 2"). <br>     ◦ Complete the top portion of each subsequent log with the date, the time the vault was opened/closed, total number of bags/envelopes removed from the vault, etc. to ensure that there is an audit trail in case the pages become separated. Obtain all required signatures on each copy of the log (as per Steps 11, 12 and 13) <br>         ▪ The total number of bags indicated on each page must be the total number of bags/envelopes removed from the vault, not the total number of bags listed on each page. <br> • **QBD Package Forward Financial Centers**: Since the account/title name will also be captured on the automated QBD manifest when the package forward bags are processed by the teller, financial centers who participate in QBD package forwarding, especially high-volume financial centers, may choose to record only the QBD bag number on the log, saving time by not writing the account name/title for each QBD bag. <br> • Envelopes and non-locking zipper bags do not need to be listed in detail like numbered bags. |
| 9 | While listing the bags on the log, examine the bags to verify that each is properly sealed. <br><br> <table><tr><th>If the bag is ...</th><th>Then ...</th></tr><tr><td>Properly sealed or locked and there</td><td>Go to step 10.</td></tr></table> |

BOA 00487

**CONFIDENTIAL - PRODUCED PURSUANT TO PROTECTIVE ORDER**

|  |  |
|---|---|
| are **no** signs of tampering | |
| Unlocked, unsealed, or the bag shows signs of tampering | Note the condition of the bag in the Unlocked/Unsealed column on the Night Depository Vault Opening/Record Log and the disposition of the bag as follows.<br><br>While keeping the bag under dual control, have an associate contact the customer to advise them of the condition of the bag.<br><br>• **If the customer agrees to allow the bag to be processed without their presence**, note the customer's name and approval (e.g., OK to process per customer's name/title) in the "Signature of Processing Tellers" field. Process the bag following Immediate Verification procedures using dual control.<br>   ○ The processing teller and dual control associate should sign the log next to the customer approval notation.<br>• **If the customer opts to pick up the bag, maintain the bag under dual control.**<br>   ○ List the bag again under the "Held for Safe Keeping" section.<br>   ○ Note when the customer picks up the bag by entering the date and time the bag was released.<br>   ○ Obtain the customer's signature and sign your initials in the applicable fields.<br>• Unclaimed bags must be kept in a dual control vault until the customer claims the bag. |

| 10 | Count the number of bags listed on the log to ensure that the total matches the total number of bags recorded at the top of the log.<br><br>• If the number of bags does not match the total recorded, recount the bags. Look on the floor and around the vault area to determine if a bag(s) has been misplaced.<br>   ○ If found, proceed to step 11.<br>   ○ If not found, notify your Financial Center Manager or appropriate designee. |
|---|---|
| 11 | Distribute the envelopes/non-locking zipper bags and bags to one or more tellers for processing.<br><br>• When assigning envelopes/non-locking zipper bags, obtain the signature of the processing teller next to the quantity of envelopes/non-locking zipper bags assigned.<br>• When assigning QBD/Canvas bags, obtain the signature of the processing teller next to each bag listed on the log.<br>• Once bags and envelopes/non-locking zipper bags are assigned, if they are transferred to another teller for processing, the original assigned teller must have the actual processing teller sign in the "Signature of Processing Teller" next to the original signature.<br><br>🛈 **IMPORTANT!**<br><br>• Dual control must be maintained up to the point where the processing teller receives the bag or envelopes. If bags or envelopes must be held pending the arrival of another teller, they must be kept in the dual control vault until given to the assigned teller.<br>• To expedite processing, canvas bags may be unlocked by one of the dual control associates in the presence of the processing teller as the are distributed.<br>• To ensure that teller cash limits are not exceeded, upon receiving bags for processing, tellers may store a portion of the unprocessed bags with their reserve cash until they have an opportunity to process them.<br>• Never leave bags or envelopes with cash left unsecured.<br>• Signature of processing teller on Night Depository Vault Opening/Record Log must be at a minimum, the associate's first initial and last name.  The signature may be the associate's full signature. The signature cannot be only initials.<br><br>Tellers should refer to the following procedures for deposit processing: |

| Night Deposit Contents | Procedure |
|---|---|
| All envelopes and non-post verifiable bags | Immediate Verification |
| QBDs on non-Package Forward days or for locations | Post Verification in the Financial |

BOA 00488

**CONFIDENTIAL - PRODUCED PURSUANT TO PROTECTIVE ORDER**

| | not set up for Package Forwarding | Center |
|---|---|---|
| | QBDs on Package Forward days | Package Forwarding |

| 12 | Have both associates performing night depository vault opening sign the log. (At a minimum, signatures must be the associate's first initial and last name. The signature may be the associate's full signature. The signature cannot be only initials.) <br><br> • If multiple copies of the log were necessary, sign **all** copies of the log. |
|---|---|
| 13 | (!) myTasks After the envelopes and bags have been assigned and processed, have a designated associate independent of vault opening and deposit processing confirm that all envelopes and bags have been processed and sign the Night Depository Vault Opening/Record Log. (At a minimum, the signature must be the associate's first initial and last name. The signature may be the associate's full signature. The signature cannot be only initials.) <br><br> • If multiple copies of the log were necessary, sign all copies of the log. <br> • If no bags or envelopes were received by the financial center that day, the independent associate must still sign the night deposit log to confirm review of the log. |
| 14 | RETAIN Retain the Night Depository Vault Opening/Record Log in a financial center file for the required period of time; then forward for offsite storage. |

Return to Top

## Revision History

- This table provides the date this module was revised and a brief description of the change.
- Revisions made in the current year and the prior year are included.

| Date | Description of Change |
|---|---|
| March 16, 2015 | The **Procedure: Removing and Logging Night Depository Contents** section has been revised to include the statement that the two associates (Dual Control Associate A and Dual Control Associate B) that sign the Night Depository Vault Opening/Record Log are certifying that they have been assigned access in myKeys, or the Key and Combination Control Log, to the Night Drop Vault,. Further, they certify that they opened and closed the vault, and maintained dual control, until either the bags were assigned to the processing tellers, or stored in the dual control vault until given to the assigned teller. Additionally the Night Depository Opening/Record Log (00-14-2898NSBW) was revised to emphasize those requirements. |
| September 16, 2014 | The **Financial Center Number** field on the Night Depository Vault Opening/Record Log (00-14-2898NSBW) has been changed to **Financial Center Cost Center Number** Step 2 of **Procedure: Removing and Logging Contents of the Night Depository** section has been revised to clarify that you need to record the financial center cost center number in the Financial Center Cost Center Number field. |
| April 24, 2014 | Step 5 of the **Procedure: Removing and Logging Contents of the Night Depository** section has been revised to include clarification about multiple deposits found in a bag, envelope or pouch. The bag, envelope or pouch is **not** to be opened by the two persons removing contents from the night depository, and is required to be counted on the Night Deposit Log as **one** item. |
| March 11, 2014 | The Night Depository Vault Opening / Record Log (00-14-2898NSBW) has been revised: the fields are now provided in the order that they are to be performed, and the signature lines for the two individuals who completed the log have been moved to the bottom of the form. This information was communicated in the 3/11 *Your News* article titled, "March brings new Operational Excellence procedures and updates." |
| January 1, 2013 | Prior Revision History has been removed. |

BOA 00489

# EXHIBIT 4

**to**

**Declaration of Deborah S. Salomon**

CONFIDENTIAL - PRODUCED PURSUANT TO PROTECTIVE ORDER

BOA 00476

# BankofA erica

Night Depository Vault Opening Record Log

Page 1 of 1

| Financial Center Cost Center Number | Date | Time Opened (Ensure vault is examined for tampering/jams.) | Total # of Bags | Total # of Envelopes / Non-Locking Zipper Bags | Time Closed (Ensure vault is empty before closing.) |
|---|---|---|---|---|---|
| | 3/4/15 | 8.58 | 1 | 2 | 8.58 |

## Envelopes / Non-Locking Zipper Bags Received/Processed

| Quantity | | Signature of Processing Teller |
|---|---|---|
| 1) | | |
| 2) | Quantity | |
| | 3) | |
| | 4) | |

Comments:

## QBD/Canvas Bags Received/Processed

| # | Account Name/Title | QBD Bag Number | Canvas Bag Number | Unlocked/Unsealed | Signature of Processing Teller |
|---|---|---|---|---|---|
| 1 | | | N4 | X | |
| 2 | | | | ☐ | |
| 3 | | | | ☐ | |
| 4 | | | | ☐ | |
| 5 | | | | ☐ | |
| 6 | | | | ☐ | |
| 7 | | | | ☐ | |
| 8 | | | | ☐ | |
| 9 | | | | ☐ | |
| 10 | | | | ☐ | |
| 11 | | | | ☐ | |
| 12 | | | | ☐ | |
| 13 | | | | ☐ | |
| 14 | | | | ☐ | |
| 15 | | | | ☐ | |
| 16 | | | | ☐ | |
| 17 | | | | ☐ | |
| 18 | | | | ☐ | |
| 19 | | | | | |
| 20 | | | | | |

Signature of the Two Individuals who completed the log
Important: The two associates (Dual Control Associate A and Dual Control Associate B) signing this log certify they have been assigned access in myKeys (or Key and Combination Log) to the Night Drop Vault and have opened and closed the vault and maintained dual control until either the bag(s) was assigned to the processing teller(s) or stored in the dual control vault until given to the assigned teller.

Dual Control Associate A (signature)

Dual Control Associate B (signature)

Signature of the Person Verifying Processed Bags/Envelopes

# EXHIBIT 5

**to**

**Declaration of Deborah S. Salomon**



BOA 00262

08/04/2015 11:20:31.20
Cashroom
Surveillance
Highland-Milford-111234



BOA 00258

08/04/2015 11:20:37.21
Cashroom
Surveillance
Highland-Milford-111234



BOA 00261

08/04/2015  11:21:55.28
Cashroom
Surveillance
Highland-Milford-111234



BOA 00265

08/04/2015 11:21:34.76
Cashroom
Surveillance
Highland-Milford-111234

BOA 00256

08/04/2015  11:21:39.27
Cashroom
Surveillance
Highland-Milford-111234



BOA 00251

08/04/2015  11:22:04.79
Cashroom
Surveillance
Highland-Milford-111234



BOA 00268

08/04/2015 11:22:19.31
Cashroom
Surveillance
Highland-Milford-111234

BOA 00257

08/04/2015 11:22:29.32
Cashroom
Surveillance
Highland-Milford-111234



BOA 00259

08/04/2015  11:23:08.85
Cashroom
Surveillance
Highland-Milford-111234



BOA 00267

08/04/2015  11:23:29.38
Cashroom
Surveillance
Highland-Milford-111234



BOA 00260

08/04/2015  11:23:51.40
Cashroom
Surveillance
Highland-Milford-111234



BOA 00270

08/04/2015 11:23:59.41
Cashroom
Surveillance
Highland-Milford-111234

BOA 00269

08/04/2015  11:24:04.92
Cashroom
Surveillance
Highland-Milford-111234



BOA 00263

08/04/2015  11:24:52.96
Cashroom
Surveillance
Highland-Milford-111234

# EXHIBIT 6

## to

## Declaration of Deborah S. Salomon

Case 4:17-cv-12388-LVP-SDD ECF No. 43-9, PageID.1044 Filed 11/27/18 Page 37 of 40

**Bank of America**
**RIG — Internal investigations Group**
**Voluntary Statement - Employees**

DATE: 8-19-2015   PLACE: Highland Milford.

TIME: 11:45   (AM) PM

I, Loei Roa , live

at 3810 Kingsway with a personal phone number of

248-444-1423

I am making this statement to Deborah Salomon .
I do make the following voluntary statement to the aforementioned person(s) of my own free will
and without any promise or offers of leniency or favors.

In speaking with Deborah Salomon Regarding the
night drop opening on August 4th 2015 time input.
The nightdrop was opened late on 8-4-15 and to remain
under audit Guidelines the time was ~~entered~~ Put to 8:58 AM.
as it may have been missed in the morning. I am taking As Taking
care of my sick Mother (on FMLA) at night and came in late time dieting
and didnt realize the night drop was not done. I went to Tired Any impossible
clock it & saw no one did it. I then ask Amy to do the nightdrop
and we agreed to input the time of 8:58 AM. There are other
times we have not had a 3rd signer Due to staffing and that
must wait until the next day as well. We felt it was in
the best interest of the customer to open night drop & I
was not being familiar with any Branch Rwriting at time
more ~~later~~ than 9:00 AM.

I have written this statement consisting of __1__ page(s). Each page bears my signature and I do
affirm all facts and statements contained herein are true and correct.

Signature
27769503
Person Number

Witness Signature and Print Name   Sean Yesko
Witness Signature and Print Name

BOA 00250

# EXHIBIT 7

**to**

**Declaration of Deborah S. Salomon**

**CONFIDENTIAL - PRODUCED PURSUANT TO PROTECTIVE ORDER**

**Bank of America**
**RIG — Internal Investigations Group**
**Voluntary Statement - Employees**

DATE: 8/20/15     PLACE: Highland/Milford

TIME: 11:21     (AM)/ PM

I, Amy Thickstun , live

at 2360 Maplecrest Dr. with a personal phone number of

248 678-3413

I am making this statement to Deborah Salomon .

I do make the following voluntary statement to the aforementioned person(s) of my own free will
and without any promise or offers of leniency or favors.

Today we spoke regarding the 8/4/15 night drop
that was processed at $ 11:28 am but documented at 8:28 am.
In this situation during the night drop got overlooked
and was realized late in the morning. At this time Lori
+ I process removed the contents of the night drop and
inaccurately documented the time with concern of it being an
audit issue for the bank. The log was then given to Rovanne
to verify and she did and filed it Debra + I also spoke
regarding the debit card log being completed by Myself +
Sean Blu when really Rovanne + Sean were the ones that
went into dual control to collect the debit cards.
Rovanne had to go to work at another center leaving Myself
+ Sean here and I was concerned that the log was not
completed + his cards were not documented so I made sure
they were. I was the only teller after Rovanne left.

I have written this statement consisting of _2_ page(s). Each page bears my signature and I do
affirm all facts and statements contained herein are true and correct.

_____          _____ Lori A Rea .
Signature                                                      Witness Signature and Print Name

_____          _____
Person Number                                          Witness Signature and Print Name

BOA 00493

CONFIDENTIAL - PRODUCED PURSUANT TO PROTECTIVE ORDER

VOLUNTARY STATEMENT OF   Amy  Thickstun   Page:  2

I accept responsibility for not doing these things correctly and understand the way they should have been done. I do wish that if Roxanne would have asked me if we were doing this right or stated there was a problem that we could have taken the time needed to see that it would have been ok to put the accurate time on the night drop log & she should have completed the log for the debit cards herself

_____
Signature

_____   Lori A Rea
Witness Signature and Print Name

_____
Witness Signature and Print Name

Voluntary Statement Form - Employees
RIG Internal Investigations Group, September 5, 2012, Revised February 2013, April 2014, Oct 2014          Page 2

BOA 00494